2011 Ark. App. 379

**Brian TANNER, Appellant**

v.

**Kristina KADUSHEVA, Appellee.**

**No. CA 10–1119.**

Court of Appeals of Arkansas.

May 25, 2011.

Jocelyn A. Stotts, Barry E. Coplin, P.A., Little Rock, for appellant.

Betty J. Hardy, James L. Phillips, Friday, Eldridge & Clark, LLP, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Brian Tanner appeals from the July 6, 2010 divorce decree in Pulaski County Circuit Court that awarded joint custody of the parties' minor son to the parties and made appellee Kristina Kadusheva the primary caregiver. Appellant argues that the circuit court erred (1) in finding that it was in the child's best interest for appellee to be the primary caregiver; (2) in making a custody determination based upon speculation of future events; and (3) in refusing to hold appellee in contempt for the destruction of evidence and strike her affirmative requests for relief for the violation of court orders. We affirm.

The parties were married on December 24, 2007. Appellee gave birth to their son, E.T., on January 20, 2009. The parties participated in counseling in May and June 2009, and continued living together in their home with their child until September 8, 2009. On September 8, 2009, appellee paid her out-of-state college tuition and took $6000 from the parties' joint bank account. Appellee went to appellant's place of employment to discuss when the family would move to Oklahoma and then subsequently filed a petition for an order of protection against him. The circuit court granted an ex parte order, which in part granted her temporary custody of the child.

Appellee then returned to their apartment, and when appellant arrived, she had the order of protection served upon him. Appellee subsequently removed property from their apartment and moved to Oklahoma. She filed her complaint for divorce on September 10, 2009. The hearing on her petition for an order of protection was set for Monday, September 21, 2009, but she dismissed the petition at 4:22 p.m. on Friday, September 17, 2009.

On September 23, 2009, the circuit court, after being presented with appellant's emergency motion for custody and appellee's answer, both filed on September 21, 2009, ordered that neither party allow the child to be out of state. But, appellee remained out of state with the child until the temporary hearing on October 1, 2009.

At the conclusion of the hearing, the circuit court found that there was no evidence of domestic abuse, granted appellee temporary custody of the child, allowed appellee to relocate with the child to Oklahoma, and granted appellant visitation. The circuit court also ordered the parties not to destroy, delete, tamper with, or otherwise change information that was stored on their laptop computers, external hard drives, or cellular telephones, or allow anyone else to do so, until the other party was given the opportunity to copy the information.

During the three-day trial held in March 2010, the circuit court heard testimony from the parties, their counselor, the custody evaluator, a computer technician, a computer engineer with forensic certifications, appellee's stepfather, and appellant's parents and friends. The counselor testified about the parties' relationships with each other and the child prior to the separation, and the custody evaluator discussed her evaluation and concerns about the misleading information that appellee gave during the evaluation as well as her concerns about appellee's conflicting statements to her, the counselor, and the circuit court. The computer technician and the engineer testified that the external hard drive produced by appellee had been wiped clean. Appellee testified that, two weeks after the court's order, she took her external hard drive to an out-of-state computer service center but was told that it had no files on it. She claimed to have a copy of the hard drive, but the engineer testified that the DVDs that she produced were merely copies of her laptop computer. All other witnesses testified about their personal interactions with the parties.

In the divorce decree filed July 6, 2010, the circuit court found that it was in the best interest of the minor child that the parties share joint custody, with appellee serving as primary caregiver in Oklahoma. Appellant timely filed his notice of appeal, and this appeal followed.

This court reviews child-custody cases de novo on the record to determine whether the circuit judge's findings are clearly erroneous. *Bethany v. Jones,* 2011 Ark. 67, 378 S.W.3d 731. A finding is clearly erroneous only if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.* The question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of witnesses, which the circuit judge is in a superior position to evaluate. *Id.* The deference accorded to the circuit court's credibility determinations is even greater in child-custody cases, as a heavier burden is placed on the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Id.* We have held that there are no cases in which the superior position, ability, and opportunity of the circuit judge to observe the parties carry as great a weight as those involving minor children. *Sharp v. Keeler,* 99 Ark.App. 42, 256 S.W.3d 528 (2007).

## I. Best Interest of Child for Appellee to Serve as Primary Caregiver

Appellant attacks the circuit court's determination of the credibility of the witnesses in this portion of his argument, despite our policy of according special deference to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest. In support of his contention that the circuit court erred in its best-interest determination appellant relies on disputed witness testimony that was carefully considered by the circuit court. *Bethany, supra.* Appellant essentially asks us to sit as a fact-finder and retry the issues of

this case; however, it is not our role to conduct a trial de novo and consider questions of fact and issues of law as if there had been no trial below. *Paslay v. Arkansas Dep't of Human Servs.*, 75 Ark. App. 19, 53 S.W.3d 67 (2001).

Both parties sift through the substantial testimony from their families, friends, counselor, custody evaluator, and the parties themselves, regarding each party's ability to care for the child, heard by the circuit court over the course of three days. Each attempts to slant that testimony to his or her respective advantage.

Appellant discusses at length appellee's alleged attempts to deceive the circuit court, along with her alleged disregard of the circuit court's orders regarding taking the child to Oklahoma during the pendency of the case and the destruction of evidence related to her computer and cell phone. He attacks both her character and her physical and mental stability with respect to her ability to properly care for and raise the parties' son.

Appellant cites Arkansas Code Annotated section 9–13–101(a)(1)(A)(i) (Repl.2009), which provides that, in an action for divorce, the award of custody of a child of the marriage shall be made without regard to the sex of a parent but solely in accordance with the welfare and best interest of the child. He also cites Arkansas Code Annotated section 9–13–101(b)(2), which provides in pertinent part that, in making an order for custody, the court may consider, among other facts, which party is more likely to allow the child frequent and continuing contact with the noncustodial parent. Appellant urges that there is no evidence in this case that appellee will foster the child's contact with him.

The circuit court heard and considered appellant's testimony that appellee was initially unsure whether she would keep the baby. Appellant argues that appellee admitted to having trouble adjusting to motherhood, but Doug Dameron, a licensed professional counselor who evaluated the parties, testified that it is not uncommon for a new mother to feel overwhelmed. Appellant contends that appellee told him that she wanted to kill herself, but testimony from others revealed that she did not really mean it and that the health-care professionals did not feel that she was depressed. Appellant claims that he is involved in the child's day-to-day life and that appellee is self-centered, but appellee testified that appellant rarely fed the child or changed his diapers while they were married and that appellant traveled frequently.

The circuit court also heard testimony from Dr. Dawn Doray, a clinical psychologist appointed by the court to perform a custody evaluation. Appellant notes Dr. Doray's concerns over inconsistencies in appellee's statements to the various professionals involved in the case and what appellee presented to the circuit court. He notes that she had no concerns about appellant's ability to care for their child, but did with respect to appellee. Appellant points out that Dr. Doray testified that nothing was presented to indicate that appellant is not capable of taking care of the child on a regular basis as a primary custodian and that his interactions with the child were more natural and that he was more realistic about being a parent.

Appellant also contends that appellee's allegation that he was addicted to pornography was a diversionary tactic, and he notes that she has taken nude pictures of herself. It is undisputed that appellant admitted to viewing pornography and that he was told by Mr. Dameron that it was harming his marriage.

Appellant relies heavily on appellee's conduct during the course of the litigation

in support of his argument on this issue. He claims that she lied in her discovery responses. He claims that she destroyed evidence. He claims that she manipulated the circuit court to get what she wanted. His basic argument is that appellee cannot be trusted.

Appellee likewise attempts to slant the various testimony from the hearings in her favor. She refers specifically to testimony from Dr. Doray that (1) appellee has an "unbreakable love" for her child and is happy to be a parent; (2) appellee is loving and physically affectionate toward the child and that they enjoy a healthy relationship; (3) appellee likes playing and reading with the child; (4) the child has "bonded" to her; and (5) appellee has a "safe and secure" home.

Appellee contends that, despite appellant's attempt to vilify her, Dr. Doray and Mr. Dameron both agreed that she is a good parent. Dr. Doray testified that appellee has "good parenting skills" and is a "positive parent" to the child, and Mr. Dameron testified that she "proves to be a very good mother." She notes that the circuit court found the foregoing testimony from Dr. Doray and Mr. Dameron to be credible and relied on it in making a custody determination. This was bolstered by appellee's uncontroverted testimony that she is a full-time employee at a law firm in Oklahoma and that she is getting an undergraduate degree from the University of Oklahoma.

After evaluating the witnesses and weighing the evidence presented, the circuit court found that appellee is a "loving, nurturing and caring parent" who is able to provide the "necessary love and support" for the child and that the child appears to be "well adjusted and on track developmentally." We hold that the circuit court was in the best position to evaluate these matters and make a credibility

determination. *See Inmon v. Heinley,* 94 Ark.App. 40, 224 S.W.3d 572 (2006). The circuit court evaluated the parties, the other witnesses and their testimony, and determined that it was in the child's best interest for the parties to share custody and for appellee to serve as primary caregiver in Oklahoma. The circuit court found that appellee is a loving parent who is able to provide for her child and that the child is doing well. Appellant simply has not shown that these findings are clearly erroneous.

## II. *Custody Determination Based Upon Speculation Regarding Future Events*

Appellant cites *Taylor v. Taylor,* 353 Ark. 69, 110 S.W.3d 731 (2003), in which the trial court changed custody of two children in part out of a concern that the children would be subjected to ridicule and embarrassment because Ms. Taylor lived with an admitted lesbian. *Id.* In reversing the trial court, the supreme court noted that the trial court was trying to protect the children from future harm based upon future public misperception and disagreed with a custody determination being based upon potential actions or events. *Id.* Appellant claims that, in this case, the circuit court based its decision upon speculation regarding when his job would allow him to relocate to Oklahoma. He notes in particular the circuit judge's comment that "a lot of it depends on where he's going to live. It will change my order." Additionally, appellant points out that the circuit judge later stated, "I am making an assumption that you're going to move to Oklahoma for the purposes of this decision." He argues that the in circuit court, basing its decision on the assumption that appellant would relocate to Oklahoma, rather than "concrete proof," was error.

The *Taylor* case is distinguishable, in that the trial judge determined that

awarding custody to the father would protect the child from future harm that would result from public misperception that his mother was in a homosexual relationship. Our supreme court reversed, holding that there was no evidence in the record from which the trial court could have concluded that the mother's relationship would result in future harm to the child and that the trial court appeared to base its decision on personal bias and belief.

Here, the evidence before us supports the circuit court's "impression" that appellant would transfer to Oklahoma as soon as his business opened an office there. Appellant's manager, Jeremiah Townsend, testified that he was "ready to move [appellant] to Oklahoma," and that he would allow him to move immediately "[i]f he needed to...." Mr. Townsend explained that the company had been training appellant in Arkansas and preparing him to move to Oklahoma. Appellant himself specifically testified that the move was "going to happen at some point." Additionally, if circumstances change and it becomes evident that appellant will not be relocating to Oklahoma, he can petition the circuit court for a review on the issue as a potential material change in circumstances.

### III. Refusal to Hold Appellee in Contempt

■ Appellant argues that the circuit court erred in refusing to hold appellee in contempt for her flagrant discovery violation in the form of the destruction of evidence and her violation of circuit court orders. He cites multiple cases in which appellate courts have upheld trial judges' exercises of discretion in the imposition of severe sanctions for flagrant discovery violations. See Calandro v. Parkerson, 333 Ark. 603, 970 S.W.2d 796 (1998); Viking Ins. Co. v. Jester, 310 Ark. 317, 836 S.W.2d 371 (1992); Matthews v. Matthews, 2009 Ark. App. 400, 322 S.W.3d 15.

We hold, however, that appellant's final assertion of error is not properly preserved. An order not mentioned in the notice of appeal is not properly before the appellate court. Thelman v. State, 375 Ark. 116, 289 S.W.3d 76 (2008). Appellant's second notice of appeal states that he appeals from the circuit court's ex parte preliminary order filed September 29, 2009; the temporary order filed November 19, 2009; the decree of divorce filed July 6, 2010; and the order filed August 19, 2010. He does not appeal from any order of contempt, and none of the orders in the second notice of appeal contain a ruling on either contempt or sanctions.

Further, the September 29, 2009 ex parte preliminary order enjoined appellant from deleting information contained on his computers. The circuit court's November 19, 2009 temporary order, among other things, prohibited both parties from deleting information stored on their computers and various other electronic devices. The July 6, 2010 decree of divorce states that appellant may file a motion for attorney's fees. Appellant did so, but did not ask the trial court to hold appellee in contempt in his motion. Appellant filed three contempt motions, one on September 28, 2009, one on March 3, 2010, and one on March 19, 2010, but he failed to obtain a ruling on any of them. Our supreme court has repeatedly stated that the failure to obtain a ruling on an issue at the trial court level precludes review on appeal, even if the issue was raised below. Huddleston v. State, 347 Ark. 226, 61 S.W.3d 163 (2001).

Affirmed.

ABRAMSON, J., agrees.

HART, J., concurs.