Cite as 2025 Ark. App. 421

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-691

| | | |
|---|---|---|
| RICHARD MACK | | Opinion Delivered September 10, 2025 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 01SDR-19-113] |
| CYNTHIA MACK | | |
| | APPELLEE | HONORABLE DONNA GALLOWAY, JUDGE |
| | | AFFIRMED IN PART; REVERSED IN PART |

**KENNETH S. HIXSON, Judge**

Appellant Richard Mack (Ricky) appeals after the Arkansas County Circuit Court entered its July 3, 2023, order in favor of appellee Cynthia Mack (Cynthia). On appeal, Ricky argues that (1) the circuit court erred in dismissing his motion to set aside or modify judgment for fraud and misrepresentation, motion for sanctions, and motion for attorney's fees as previously decided; (2) the circuit court erred in granting Cynthia's motion for attorney's fees; (3) the circuit court erred in calculating both parties' income for child-support purposes; and (4) the circuit court erred in not finding Cynthia in contempt for weekday-visitation issues. We affirm in part and reverse in part.

I. *Relevant Facts*

Ricky and Cynthia were married in 2005. This case began on September 4, 2019, when Cynthia filed her complaint for divorce. On September 24, 2019, Ricky filed his

answer and counterclaim for divorce. Both parties sought custody of their three minor children. After much litigation—requiring separate appointments of a special master to determine the parties' financial condition and an attorney ad litem and both temporary and agreed orders filed in the interim not relevant to this appeal—the circuit court eventually filed an amended decree of divorce on November 22, 2021 (the "amended final decree"). Relevant to this appeal, the circuit court adopted the attorney ad litem's report and the parties' agreement that they should share joint custody of the minor children. Regarding child support, the circuit court continued the child-support obligation that was set in the parties' agreed order filed on September 30, 2020. According to the agreed order, it was determined that Cynthia earned a gross income of $2,454.01 a month, and Ricky earned $18,471.58 a month. Ricky was therefore ordered to pay Cynthia $2,054.48 a month in child support for three minor children.

After considering the special master's report, the circuit court made an unequal distribution of the marital assets. The record revealed that Cynthia was employed as a bank teller, and Ricky owned and operated a rice hull trucking company. One of the disputes throughout the litigation concerned the fact that large amounts of cash were kept in a safe located in the marital home. Because the court's disposition of this asset is relevant to this appeal, it is necessary to discuss the circuit court's specific findings regarding this asset in the amended final decree:

> 5. [Ricky] testified that his business grosses about $800,000 per year in income (average gross income from 2015 - 2020 income tax returns show an average income of $784,000 per year). [Ricky]'s business is rice hull hauling and comes from referrals

2

from his brother. No actual business can be sold or transferred, and his future income is dependent on his relationship with his brother and the referred customers.

6. [Cynthia] claimed that she and [Ricky] stored a large amount of U.S. currency in a home safe during the parties' marriage. Plaintiff testified that the source of the U.S. currency was money held back from deposits that should have been deposited in the [trucking] business checking account but instead was taken home. The parties set aside some cash to pay current bills, but the remaining amount was bundled in $100 bills and placed in the home safe for various future marital expenditures.

7. The parties paid many bills in cash. Testimony from Mr. Paul Osborne, CPA, stated that total yearly check deposits from 2014 through 2019 were more than what the parties reported as gross income on their federal and state income tax returns. Mr. Osborne testified that the notation "cash-back" marked on deposit slips totaled at least $406,000 during the stated years.

8. However, there is no record of the amounts kept in the safe at any given time. The Court finds that whatever amount was actually located inside the safe before the inventory is purely speculative. There was no paper trail or evidence presented what the parties did with cash-back money after placing it inside the home safe, nor are there records establishing how they spent the cash.

9. [Cynthia] testified there was close to $1,000,000 in the safe at some point before they separated; however, the safe was opened (on or about September 6, 2019, see the Ex Parte Order entered that date), there was $16,450.

10. [Ricky] denied removing any money except $16,450, which he asserted he later put back in the safe.

Cynthia was awarded the marital home, and Ricky was ordered to immediately sign a quitclaim deed after entry of the amended final decree. He was also ordered to equally divide the remaining cash in the safe, which he represented was $16,450, "on or before October 31, 2021." The circuit court divided the other marital property, which is not relevant to this appeal. Ricky was further ordered to pay his own attorney's fees, the special master's fees, the attorney ad litem's fees, and $25,000 toward Cynthia's attorney's fees.

3

A week later, on November 30, 2021, before Ricky filed his notice of appeal from the amended final decree, Cynthia filed a motion for the circuit court to direct Ricky to appear and show cause why he should not be held in contempt. Cynthia explained that the circuit court had instructed Ricky during a phone conference on October 26, 2021, to open the home safe and divide the cash on or before October 31, 2021, and he failed to do so. Although she stated that Ricky indicated that he would open the safe and divide the cash on December 5, 2021, Cynthia claimed Ricky was violating the court's amended final decree and should be held in contempt. The circuit court issued an order to show cause and set a hearing for February 8, 2022. Cynthia filed an amended motion to show cause on December 10, 2021, alleging that Ricky did not appear to open the safe on December 5, 2021, and should be held in contempt. She further alleged that because Ricky did not open the safe, she had the safe professionally opened and discovered no cash inside. As such, Cynthia argued that Ricky must have already taken the $16,500[1] out of the safe on an earlier date. She explained that footage from a security camera showed that Ricky had gone with his girlfriend to the marital home on October 31, 2021, and that the girlfriend had entered the home. Additional orders to show cause were filed after the amended motion, also scheduling a hearing for February 8, 2022.

Ricky filed his notice appeal from the amended final decree on December 21, 2021.

---

[1]We acknowledge that Cynthia's amended motion alleges that Ricky took $16,500 out of the safe even though the amended decree states that Ricky represented that only $16,450 was left in the safe.

Thereafter, a series of additional motions and responses were filed by both parties. Ricky filed a combined motion to dismiss, motion to strike, response to Cynthia's motion for contempt, and a countermotion for contempt on December 21, 2021. He explained that no written order was entered regarding the safe until the amended final decree was filed on November 22, 2021. He further argued that Cynthia's contempt motion should be dismissed because it was not verified, or alternatively, it should be dismissed pursuant to Arkansas Rule of Civil Procedure 12(b)(6). In his countermotion for contempt, Ricky alleged that Cynthia had violated the amended final decree by interfering in his telephone communication with the children, failing to cooperate regarding disciplinary decisions for the children, discussing the litigation with the children, failing to pay him $3,600 as ordered, failing to divide her retirement, and selling marital property without consent and pocketing the proceeds. On the same date, December 21, Ricky additionally filed a separate motion to stay any enforcement of the amended final decree without a bond pending his appeal. He alternatively represented that he was willing to post a supersedeas bond if the circuit court deemed it necessary. On December 27, Ricky filed a response denying that he should be held in contempt and a motion to strike Cynthia's amended motion to show cause.

Cynthia filed yet another motion and second amended motion to have the circuit court hold Ricky in contempt, essentially stating the same allegations as her previous motions: that Ricky failed to open and divide the cash in the safe as ordered. In her second amended motion, she additionally alleged that Ricky should be held in contempt because he had failed to pay her attorney $25,000 in attorney's fees. Cynthia also filed responses to

5

Ricky's motions arguing that her motion for contempt did not require verification, that she alleged sufficient facts to support her motion, and that Ricky's countermotion for contempt should be dismissed because Ricky had unclean hands, and she did not have a retirement account that could be divided. Regarding Ricky's motion to stay any enforcement of the amended final decree pending appeal, Cynthia requested that Ricky be ordered to post a bond for a minimum of $290,750 plus ad litem fees and other costs and that Ricky's motion to strike be dismissed.

In Ricky's replies and response, he maintained that Cynthia's motions for contempt should be denied and dismissed, and he asked to be heard on his motion that no supersedeas bond be posted.

An agreed order as to custody and other matters concerning the children was filed on January 13, 2022. The parties agreed to share joint custody, foster a relationship with the other parent, and refrain from discussing the issues of the divorce with the children. Additionally, another order to show cause was filed on January 23, 2022, ordering Ricky to appear and show cause why he should not be held in contempt for failing to pay $25,000 in attorney's fees to Cynthia's attorney as alleged in her second amended motion for contempt.

A hearing was held on February 11, 2022. The circuit court held an off-the-record discussion with counsel in chambers. When the hearing resumed, the circuit court orally ruled that Ricky was to immediately pay Cynthia $8,225, representing half of the $16,450 the circuit court found was in the safe according to the amended final decree less $3,600 that Cynthia owed Ricky for homeowner's insurance. It further ordered that Ricky was to

6

immediately pay half of the special master fees totaling $5,715.63. Thereafter, the circuit court heard the special master's findings regarding the valuation of the remaining marital assets, and the circuit court ruled that Ricky be required to post a supersedeas bond for $525,000 pending the resolution of his appeal. After Cynthia's counsel requested attorney's fees be awarded for the pending motions for contempt, the circuit court stated the following:

THE COURT: Here's what I will do. I will definitely consider attorney -- awarding attorneys' fees for the future if things are not progressed by that order for them to be done from this point forward. Complacency, not having the ability to do something, or whatever excuse that exists out there as to why my order was not complied with in the past -- I will hear nothing of in the future. And I will be slapping on attorneys' fees for any future action that has to be brought before me at the expense of one of the parties, because one party does not want to comply or wants to delay an actual expedited process of getting things done that I've already ordered to happen. I don't care what they -- as whether that's the deed; whether that's the payment of money; or whatever happens in the future. But I will not tolerate any future delay, and I will be awarding attorneys' fees for the party that causes that other party to have to file a motion.

[CYNTHIA'S COUNSEL]: So, at this point, the attorney's fees that she's incurred since November 22nd, will that -you're not going to consider those ever? Or you'll just not consider those today?

THE COURT: I'm not going to consider those today. We're going to kind of hold those and we're going to just keep those out there.

[CYNTHIA'S COUNSEL]: Okay.

7

THE COURT:                   As long as everything is complied with from this point forward, I will not award those attorneys' fees. But I will be awarding those fees if there are future delays.

Ricky's counsel was ordered to prepare the order in accordance with the oral rulings. However, a written order was never filed. Instead, Ricky withdrew his appeal of the amended decree on March 3, 2022.

On March 25, 2022, Ricky filed a motion for modification of custody and support. In his motion, Ricky alleged that a material change of circumstances warranted a modification of custody. Ricky alleged that Cynthia had allowed and encouraged the parties' eldest minor child to consume alcohol to the point that she was intoxicated and vomiting in front of the other minor children. Cynthia had also provided the minor child cigarettes and "vapes." Ricky further alleged that Cynthia had interfered with his telephone communication with the minor children, failed to cooperate with him regarding disciplinary issues, discussed the divorce litigation with the minor children, and disparaged him to the minor children. Accordingly, Ricky requested that he be granted primary custody and child support. Cynthia generally denied the allegations and asked that the motion be dismissed.

Ricky's requests for admission and Cynthia's responses were filed on April 26, 2022. In her responses, Cynthia admitted that she had allowed her eldest child to consume alcohol, that she had opened the locked safe after the divorce hearing without a locksmith, that she had a retirement account in existence at the final divorce hearing that no longer had any funds, that she told the minor children Ricky could have them for visitation if he signed the quitclaim deed, and that she allowed one of the minor children to review the visitation order.

8

On May 20, 2022, Ricky filed a motion to set aside or modify judgment for fraud and misrepresentation by Cynthia, a motion for sanctions, and a motion for attorney's fees and costs. He argued that the amended final decree should be modified or set aside pursuant to Arkansas Rule of Civil Procedure Rule 60(c)(4), and Cynthia should be sanctioned for intentionally making false statements to the circuit court throughout the case. He explained that Cynthia had maintained at the divorce hearings that she did not have the combination to the locked safe and that Ricky's girlfriend must have removed any remaining funds from the safe. However, in her responses to the requests for admissions, Cynthia admitted that the safe was opened without a locksmith, which Ricky argues could have been accomplished only if Cynthia knew the combination. He further explained that Cynthia made false statements regarding her retirement account and admitted in her responses to the requests for admissions that there was a retirement account in existence at the time of the final divorce hearing but no longer has any funds. Ricky asked the circuit court to grant his motion to modify or set aside the amended decree, order Cynthia to reimburse him the moneys he had paid her, and grant him attorney's fees and costs.

On June 6, 2022, Cynthia filed a motion requesting that Ricky's motion to modify or set aside the amended decree be dismissed because the circuit court lacked jurisdiction as the motion failed to "meet the pleadings requirements found in Rule 9(c) of the Arkansas Rules of Civil Procedure." She further requested that the circuit court grant her attorney's fees for bringing her contempt action that was presented on February 11, 2022. In response, Ricky asked that Cynthia's motion to dismiss and request for attorney's fees be denied. He

argued that his motion properly complied with Rule 9(c) of the Arkansas Rules of Civil Procedure.

On August 31, 2022, the circuit court granted Ricky's request for the appointment of an attorney ad litem and appointed Cynthia S. Moody to protect the rights of the parties' minor children on September 6, 2022.

Ricky then filed a motion for reduction of child support on December 21, 2022. In his motion, he explained that he had experienced a reduction of income due to the "effects from COVID-19, increased costs to the transportation industry, issues with equipment which cause a reduction in income, and fewer job opportunities." Accordingly, he asked that his child-support obligation be revisited and recalculated to reduce the amount of his child support owed.

On May 15, 2023, Cynthia filed a motion for attorney's fees asking the circuit court "to award her attorney fees from the contempt hearing held on February 11, 2022." In response, Ricky filed a motion to dismiss and strike her motion for attorney's fees. He argued that the motion should be dismissed pursuant to Arkansas Rule of Civil Procedure 12(b)(6) or struck for failing to comply with Arkansas Rule of Civil Procedure 54(e).

On May 22, 2023, the attorney ad litem filed her report. She recommended that the parties continue to share joint custody and that the parties attend co-parenting therapy.

A hearing was held on May 23, 2023. At the start of the hearing, the parties agreed to follow the attorney ad litem's recommendation to continue joint custody along with other recommendations and modifications not relevant to this appeal. Reagan Tracy Fox was

10

called out of order as an expert witness in forensic accounting on Cynthia's behalf regarding child-support calculations. Mr. Fox testified that he is familiar with the guidelines for calculating child support and had examined Ricky's 2022 income tax return, which was admitted into evidence without objection. Mr. Fox further testified that he had examined Ricky's 2021 and 2022 bank statements. According to Mr. Fox, Ricky had bank deposits in excess of the gross revenue reported on his tax returns. For example, Mr. Fox explained that in 2021, Ricky's gross bank deposits totaled $843,284.15. However, his gross receipts reported on his tax return totaled only $801,482. In 2022, Ricky's gross bank deposits totaled $1,318,904.98. However, his gross receipts reported on Schedule C of his taxes totaled only $816,896. Mr. Fox admitted that he did not know whether Ricky had underreported his income to the IRS. He simply explained that he determined that there were "more deposits to his business accounts than were reported in gross receipts in his returns." He further admitted that there could be other explanations for the deposits that did not include income. Mr. Fox testified that after reviewing all documents, he estimated that Ricky's gross monthly income is $11,197.50, and that figure should be used in calculating child support.

Ricky testified that he had been paying $2,054.48 a month in child support. He explained that child support was set when the parties had three minor children and that one of the children had recently turned eighteen and graduated high school. He further explained that when child support was set, his income was approximately $190,000 but now his income was much lower because it was difficult to find good drivers for his trucking

11

business. Ricky testified that he paid himself $500 a week from his business. Although he admitted that he would get cash back from some of the bank deposits, he would later redeposit them back into the business account. Ricky maintained that he had no other income, that his business lost $60,000 in 2022 despite the gross receipts as reflected on his tax return prepared by his accountant, and that the circuit court should use his recent tax returns to calculate his income for child-support purposes. He thought Cynthia also had a reduction in income; however, he asked that the circuit court calculate her income using the income she made at her previous job because she had quit her job and had voluntarily taken a pay cut.

Regarding his motion for contempt, Ricky testified that Cynthia had violated the amended decree by allowing their daughter to drink alcohol, not allowing him visitation during the week, and not allowing him to have phone communication with their youngest child. Ricky explained that he had asked for midweek visitation, but Cynthia repeatedly told him no. Accordingly, Ricky asked that Cynthia be held in contempt.

Ricky reiterated that he did not take the $16,450 from the safe in the marital home after the divorce hearing. He stated that Cynthia must have had access to the safe even though she testified that she did not know the combination to the safe at the final divorce hearing. He requested that he be reimbursed for the funds he was ordered to pay Cynthia and $10,000 in attorney's fees.

On cross-examination, Ricky admitted that he purchased a new residence after the divorce decree was entered in 2022 for $300,000. He claimed that he had used a cashier's

12

check to purchase the home with money that he had saved in a shoebox under his bed. He explained that some of the money in the shoebox came from the CDs he was awarded by the court, and the remaining money came from earnings that he made from 2019 through 2021. He denied that any of the money came from the safe at the marital home or that his girlfriend took any money from the safe.

When Ricky was asked about his contention in his motion to set aside or modify judgment that he should be reimbursed for the money he paid Cynthia, the following colloquy and ruling ensued:

| | |
|---|---|
| THE COURT: | Okay. So if I remember correctly, this issue about the 16,000 has – we've already – we've already discussed, and a decision has been made with regard to the 16,000, so you're ~ [Ricky], you're ~ Mr. Thomas, on behalf of [Ricky], you are asking for contempt for something that's already been decided upon. He paid the ~ he paid one-half of that per the last hearing that we had. So tell me why we're going back now. I'm ~ I am a little confused. Please enlighten me. |
| [RICKY'S COUNSEL]: | So after that hearing, we learned that [Cynthia] did have the combination to the safe. |
| THE COURT: | Okay. So – |
| [RICKY'S COUNSEL]: | I mean that's part of the record. That's in her deposition everywhere. So she had the combination at some point, so we're alleging that she removed the money from the safe – |
| THE COURT: | Okay. Now I see – |
| [RICKY'S COUNSEL]: | ~ after that hearing ~ or before the hearing. We don't ~ she doesn't know. But we're alleging that it was removed by [Cynthia]. My client had to pay half that money that |

13

he was ordered to have half of, and now he has nothing, and she allegedly has kept all of it.

[CYNTHIA'S COUNSEL]: Judge, if you'll read the pleadings, that – that's not what happened. The pleadings on this, which was filed in – in early December, says that he promised that he'd be there December 1st. He didn't show up. She was able to contact someone who – who was able to get the combination to her, and she opened it up, and that's when she found out the money was missing. And in between that, between October and December is our theory that – that [Ricky] directed [Ricky's girlfriend], or [Ricky's girlfriend] went over there on her own, because she – because in October when she was scouting the home, when she went inside the home, and the – and learned where the safe was, and looked – you know, found out where it was located, and she got the money. And there's just as much – there's just as much proof that she took the money as there is that [Ricky's girlfriend] took the money. Just the same amount.

THE COURT: Okay.

[CYNTHIA'S COUNSEL]: It's our theory – our . . .

THE COURT: From my recollection that these facts, [Ricky's Counsel], are consistent with what has already been ordered by this Court with regard to the 16,000, so I am denying the request on the 16,000 to be reimbursed to [Ricky]. That has already been an issue that has been decided, and the facts are consistent based on my recollection of this case.

The reason why I am able to remember some of this specifically is because some of this happened before I even took the bench, and I think the original police escort to the home, that happened in 2020.

[CYNTHIA'S COUNSEL]: Right. Now –

14

THE COURT:                    And so we're going to move on, and that's not going to be ~ that decision's already made then for today.[2]

Regarding Ricky's complaint that he had been denied weekday visitation, Cynthia's counsel asked whether he kept a diary of when his requests for visitation were denied. Ricky said that any texts of proof would be on his cell phone. He admitted that he had not been denied every weekday-visitation request and admitted that there were weeks he did not ask for visitation. He found a few instances of text exchanges where Cynthia did not give him the weekday visitation that he had asked for. Ricky claimed that Cynthia refused to allow him phone communication with the children hundreds of times and claimed that any documentation was in his cell phone; however, no further evidence was entered into evidence on that issue.

The parties' eldest daughter testified that she had recently turned eighteen and had graduated high school. She admitted that Cynthia gave her alcohol to drink at Cynthia's home, causing her to become intoxicated and sick. She further admitted that Cynthia allowed her to "vape."

Cynthia testified that her gross pay was between $1100 and $1200 biweekly. Her affidavit of financial means, also listing those amounts, was admitted into evidence. Regarding Ricky's income, Cynthia testified that Ricky made multiple bank deposits and took "cash back." She explained that any bank statements admitted into evidence reflecting

---

[2]At the end of this colloquy, Ricky did not proffer any additional evidence regarding the contents of the safe.

an amount deposited would not include any cash back that Ricky had already received. She said that she had never seen Ricky put any money into a shoebox during their marriage. When Cynthia's counsel asked whether she opened the safe and withdrew $16,500, Ricky's counsel objected and stated that Ricky's motion had already been dismissed. The question was withdrawn.

Cynthia admitted that she gave her eldest daughter alcohol. She said that she had no problem with Ricky exercising weekday visitation if they did not have any plans or extracurricular activities schedule. She explained that Ricky had also refused her visitation once or twice, but she was not filing for contempt against him.

On cross-examination, Cynthia testified that she thought she had complied with the court's order regarding weekday visitation. She admitted that during her deposition, she said there were times a child would not want to go to midweek visitation and that she did not make the child go. Cynthia testified that she is a teller at Farmers & Merchants Bank. She said that her income varies depending on the children's school schedule. She admitted that she had voluntarily left her previous employment where she had made between $16 and $17 an hour. Cynthia testified that she had someone living with her. Although that person had not been paying her anything at that time, she explained that the person had agreed to pay her $200 a month plus 25 percent of the utilities starting the following month. Cynthia stated that in 2022, she had sold two lots that she owned, receiving $14,332.86 for one and $20,000 for the other.

At the conclusion of Cynthia's testimony, the circuit court orally found Cynthia in contempt of court for providing alcohol to her daughter and "for not providing or following the order to compel on the discovery issue that we had a hearing on." Ricky's counsel asked that he be awarded $5,000 for each reason. Cynthia's counsel asked that she be awarded attorney's fees for Ricky's failure to pay the appeal bond as ordered by the court at the previous February hearing and instead withdrawing his appeal. Ricky's counsel asked that child support be set using the average of his last two tax returns. Cynthia's counsel disagreed and asked that the $300,000 be imputed to Ricky as income because his testimony was not credible that it came from money he kept in a shoebox. Counsel agreed that the imputed income could be amortized over a longer period but argued it should be imputed in some form to Ricky. Cynthia's counsel further argued that Cynthia's income should be calculated at approximately $1250 a pay period, with twenty-six pay periods a year. The circuit court stated that it would take the matter under advisement, and the hearing concluded.

The circuit court filed a written order on July 3, 2023, making the following relevant findings:

> 2.      That the Court dismisses [Ricky]'s Motion to Set Aside or Modify Judgment for Fraud and Misrepresentation by Plaintiff, Motion for Sanctions, and Motion for Attorneys' Fees and Costs as the Court found these motions were previously decided.

> 3.      The Court adopts the Attorney ad Litem's report and incorporates the Attorney ad Litem's recommendation into the Court's May 23, 2023, orders from the bench. The parties reached an agreement on custody and visitation pursuant to the ad Litem's recommendation, set forth below:

a. The ad Litem does not find a material change in circumstances to exist. Custody and visitation shall remain as previously ordered, apart from a few modifications.

. . . .

4. That the Court finds [Cynthia] to be in contempt for failing to comply with the Court's Order to Compel Discovery and for ignoring the Court's admonishment about having the Parties' children exposed to alcohol in the home. [Cynthia] actually went one step further and provided alcohol to her seventeen (17) year-old daughter on multiple occasions. The Court also acknowledges that the Plaintiff allowed her fifteen-year old son drive without a license.

5. [Cynthia] shall pay $4,000.00 toward [Ricky]'s attorneys' fees for these contempt issues. [Cynthia] shall pay $250.00 per month to [Ricky]'s attorney, Trent D. Thomas with River City Law, PLLC until paid in full. Should [Cynthia] receive a tax refund to pay off the full amount, [Cynthia] shall do so.

6. The Court grants [Cynthia]'s Motion for Attorneys' Fees filed on May 1, 2023, due to [Ricky] withdrawing his appeal and not moving forward with the supersedes bond. The Court awards Attorney Bryant $5,800.00 to be paid directly to Attorney Bryant within seven (7) days of June 6, 2023.

7. The Court grants [Ricky]'s Motion for Reduction in Child Support pursuant to the below calculations of income.

8. The Court has determined that [Cynthia] (Parent 1) earns a gross income of $2,708.00 per month and [Ricky] (Parent 2) earns a gross income of $18,300.00 per month. Therefore, the parents' combined gross income is $21,008.00 with a basic child-support obligation of $2,251.00 for their two (2) children per the Chart. The Court also finds that [Cynthia] (Parent 1) is paying for the child's health insurance premium in the amount of $0.00 per month and that the parties have $0.00 in childcare expenses, for a total of $0.00 for additional child-rearing expenses. [Cynthia] (Parent 1) is responsible for 12.89% of the total obligation ($290.15 share of basic obligation plus an additional $0.00 for additional child rearing expenses) and has a total child-support obligation of $290.15. [Ricky] (Parent 2) is responsible for 87.11% of the total obligation ($1,960.85 share of basic obligation plus $0.00 for additional child rearing expenses) and has a total child support obligation of $1,960.85. Due to the joint custody arrangement, the child support obligation shall be deviated downwards on an off-set by subtracting Parent 1's obligation from Parent

2's obligation. The Court finds that Parent 2 shall pay $1,670.70 per month in child support beginning May 23, 2023.

9. In determining [Ricky]'s income, the Court took the net profits for 2021 and 2022 (loss in 2022) and added back in the depreciation and averaged the two years together for a total of $11,000/monthly. Additionally, the Court imputed $300,000 in cash used to purchase [Ricky]'s new home is to be considered income. Since the middle child will turn eighteen and most likely graduate from high school in three to four years, and child support will have to be re-set for one child, the Court added $100,000 to [Ricky]'s gross income for the next three (3) years. The Court determined that [Ricky] earns a gross income of $18,300 per month. The Court relied on Administrative Order No. 10's language on accelerated depreciation in determining [Ricky]'s gross income.

This appeal followed.

## II. *Motion to Set Aside or Modify Judgment*

On appeal, Ricky first argues that the circuit court erred in dismissing his motion to set aside or modify judgment for fraud and misrepresentation, motion for sanctions, and motion for attorney's fees as previously decided. He complains that Cynthia did not file a motion to dismiss his motion on the basis found by the circuit court and further claims that he was denied the opportunity to present his evidence in support of his motion. Therefore, he argues that this court should reverse and remand for the circuit court to rehear his motion. We disagree.

After ninety days have elapsed from the entry of judgment, the circuit court's authority is limited by Arkansas Rule of Civil Procedure 60(c). *Phillips v. DeLage Landen Fin. Servs.*, 2019 Ark. App. 44, 571 S.W.3d 512. In his written motion, Ricky stated that his motion was filed pursuant to Arkansas Rule of Civil Procedure 60(c)(4), which provides, in pertinent part, that a circuit court may set aside a judgment for "misrepresentation or fraud

. . . by an adverse party." Ark. R. Civ. P. 60(c)(4). In *Harrill & Sutter, P.L.L.C. v. Kosin*, 2012 Ark. 385, 424 S.W.3d 272, the supreme court explained the necessary elements to prove fraud as contemplated under Rule 60(c)(4). In order to prove fraud, a plaintiff must prove five elements: (1) that the defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation. *Id.* The party seeking to set aside a judgment on the basis of fraud has the burden of proving fraud by clear, cogent, and convincing evidence or, as our courts have sometimes said, clear, strong, and satisfactory proof. *Id.* Further, a party is not entitled to relief under Rule 60(c) if diligence has not been exercised in protecting his or her interests. *Phillips*, *supra*. It is within the circuit court's discretion to determine whether it has jurisdiction under Rule 60 to set aside a judgment, and the question on appeal becomes whether there has been an abuse of that discretion. *Harrill & Sutter*, 2012 Ark. 385, 424 S.W.3d 272.

Here, the circuit court held a hearing on Ricky's motion to set aside or modify judgment along with other pending matters on July 3, 2023. In that hearing, Ricky was given an opportunity to present his Rule 60(c)(4) fraud case before the circuit court. However, when the circuit court specifically asked Ricky's counsel to "enlighten" it as to why Ricky was attempting to relitigate an issue that had already been determined, Ricky's counsel simply

20

explained that it was his contention that Cynthia had the combination to the safe and that she therefore also had access to the safe.

The myriad of overlapping motions filed by each party somewhat blur the court's ruling. Assuming arguendo that Ricky produced relevant evidence of Rule 60(c)(4)'s first four elements set forth in *Harrill & Sutter*, the record is void of any relevant evidence of element five (i.e., that Ricky suffered damage as a result of the false representation) nor did Ricky proffer any such evidence. This was the third time Ricky attempted to litigate the amount and distribution of the money allegedly contained in the safe. In the September 16, 2021, hearing that led to the amended final decree, the parties litigated the contents in the safe, and in the amended final decree, the court ordered Ricky to deliver to Cynthia one-half of the money ($16,450) in the safe by October 31, 2021. Ricky did not deliver one-half of the money by October 31, and Cynthia filed a petition for contempt. At the February 11, 2022, hearing for contempt, when asked why he did not deliver one-half of the money in the safe by October 31, Ricky provided the following answered: "I must have got held up doing something else and didn't get over there." At the conclusion of the contempt hearing, the court again ordered Ricky to immediately pay Cynthia one-half of the money in the safe less certain deductions. Ricky later testified that he made the payment. Now, Ricky is attempting a third bite at the same apple under Rule 60(c)(4) and argues that due to Cynthia's alleged fraud, not only should she reimburse him for his postcontempt payment but that Cynthia should be ordered to pay to him the entire $16,450 that was in the safe when the amended final decree was filed.

21

Within that context, we review Ricky's pleadings and argument before the circuit court. In Ricky's motion to set aside or modify the amended final decree, Ricky alleged that Cynthia committed fraud in that she was dishonest in her testimony at trial when she testified that she did not have access to the safe. Ricky alleged that pursuant to Rule 60(c)(4), the court should sanction Cynthia's fraud "however the court deems reasonable." When the subject of the safe was broached at the multi-issue hearing on May 23, 2023, Cynthia's counsel objected and argued that "[a]ll this has already been litigated." The circuit court responded with the following in pertinent part: "What relevance does this have at this point in time? Tell me where you're going with this because this has all been . . . hashed out before. . . . So tell me why we're going back now? I'm – I am a little confused. Please enlighten me." Ricky's counsel then explained how he discovered that Cynthia did, in fact, know the combination of the safe at the time of the 2021 divorce hearing, and he opined several possible explanations of where the alleged $1 million went. Thereafter, the circuit court provided the following oral ruling: "That has already been an issue that has been decided, and the facts are consistent based on my recollection of this case. . . . And so, we're going to move on, and that's not going to be – that decision's already been made then for today."

The court subsequently filed an order, and one of the points pertained to the motion to set aside or modify the amended final decree. The circuit court specifically made the following finding: "2. That the court dismissed the Defendant's Motion to Set Aside or Modify Judgment for Fraud and Misrepresentation by Plaintiff . . . as the court found these motion(s) were previously decided."

Ricky argues on appeal that "the Circuit Court deprived [him] of his day in Court and his opportunity to present evidence on his motion, with no notice that this was going to be dismissed." He acknowledges that Cynthia had filed a motion to dismiss his motion to set aside or modify amended final decree. However, he complains that her motion did not specifically argue that the motion had been "previously decided" as noted in the court's order. He likens his case to the circumstances in *Lipsey v. Giles*, 2014 Ark. 309, 439 S.W.3d 13; *Matsukis v. Joy*, 2010 Ark. 403, 377 S.W.3d 245; and *Rogers v. Lamb*, 347 Ark. 102, 60 S.W.3d 456 (2001). However, those cases are distinguishable from the facts of this case. Those cases involved a circuit court sua sponte granting summary judgment, and the supreme court held that it is erroneous for a court to dismiss *a complaint* without a motion, hearing, or other evidence in support of the dismissal. *Lipsey*, *supra*. That is not the case here.

As outlined above, here, Cynthia timely filed a motion to dismiss in response to Ricky's motion to set aside the judgment. Then, during the hearing, the circuit court specifically asked Ricky to present his argument to the court as to why he was asking to relitigate an issue that had already been decided. We note that during Ricky's counsel's argument to the circuit court, he never mentioned Rule 60(c)(4); he never developed any argument regarding 60(c)(4) and the required elements; and perhaps more importantly, he did not proffer any testimony that would not be complete speculation and conjecture concerning damages arising out of the alleged fraud. This is especially true recognizing that Ricky had the burden of proving fraud by clear, cogent, and convincing evidence. We have

23

held that conclusory assertions and general statements do not rise to the level of developed argument to preserve an issue for appellate review. *See Dye v. Precision Found. Specialties & Flow Rite Drainage Sols., Inc.*, 2025 Ark. App. 183; *Jade Prop. Holdings, LLC v. First Serv. Bank*, 2024 Ark. App. 414, 699 S.W.3d 136. Thus, because Ricky failed to develop his argument below, it is now procedurally barred. *See Dye, supra.* Accordingly, we must affirm on this point.

III. *Attorney's Fees for Withdrawing Appeal*

Next, Ricky argues that the circuit court erred in granting Cynthia's motion for attorney's fees on the basis that Ricky withdrew his appeal and failed to move forward with posting a supersedes bond. Under the particular circumstances of this case, we agree that the circuit court abused its discretion in awarding attorney's fees.

It is well settled that the circuit court has the inherent power to award attorney's fees in domestic-relations proceedings, and no statutory authority is required. *Hargis v. Hargis*, 2019 Ark. 321, 587 S.W.3d 208. However, here, at the conclusion of the hearing on May 23, 2023, Cynthia explained that she was entitled to attorney's fees because Ricky had failed to move forward with posting a supersedes bond after the court's previous hearing on February 11, 2022, and instead withdrew his appeal. In its written order, the circuit court made the following finding: "6. The Court grants [Cynthia]'s Motion for Attorneys' Fees filed on May 1, 2023, due to [Ricky] withdrawing his appeal and not moving forward with the supersedes bond. The Court awards Attorney Bryant $5,800.00 to be paid directly to Attorney Bryant within seven (7) days of June 6, 2023." The supreme court has held that an

24

appellant may withdraw his or her appeal before the case is submitted to the court for decision without giving a reason. *Weaver v. Valley*, 366 Ark. 349, 235 S.W.3d 513 (2006). Accordingly, we reverse the circuit court's award of $5,800 in attorney's fees to Cynthia's attorney. *See generally Frazier v. Bland*, 2024 Ark. App. 495, 700 S.W.3d 476. Because we reverse on this basis, it is unnecessary to consider Ricky's alternative arguments for reversal.

IV. *Child Support*

Ricky argues that the circuit court erred in calculating both parties' income for child-support purposes. Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *David v. David*, 2022 Ark. App. 177, 643 S.W.3d 863. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.* In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and that court's findings will not be reversed absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). However, a circuit court's conclusions of law are given no deference on appeal. *Id.*

The circuit court decided this case under the "Income Shares Model" adopted by the supreme court in Arkansas Supreme Court Administrative Order No. 10. Our supreme court has said that the definition of income included in Administrative Order No. 10 "is intentionally broad and designed to encompass the widest range of sources for the support

of minor children." *McWhorter v. McWhorter*, 346 Ark. 475, 481, 58 S.W.3d 840, 844 (2001);

*Howard v. Howard*, 2024 Ark. App. 566, 701 S.W.3d 48.

> To determine monies that a parent has available for support, it may be necessary to examine business tax returns, balance sheets, accounting or banking records, and other business documents to identify additional monies a parent has available for support that were not included as personal income. . . . . In general, the court should carefully review income and expenses from a parent's self-employment or operation of a business to determine actual levels of gross income available to the parent. The court's duty is to accurately determine a child-support obligation in every case. This amount may differ from the determination of business income for tax purposes.

Ark. Sup. Ct. Admin. Order No. 10(III)(3)(b)–(c). Section III, paragraph 8 addresses

"Income Imputation Considerations" and provides in pertinent part:

> If imputation of income is ordered, the court *must take into consideration* the specific circumstances of both parents, to the extent known, including such factors as the parents' assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

> There is a rebuttable presumption that the payor and the payee can work full-time or earn full-time income, and the court *may calculate* child support based on a determination of potential income that would otherwise ordinarily be available to the parties.

> . . . .

> In addition to determining potential earnings, the court *may* impute income to any non-income producing assets of either parent, if significant, other than a primary residence or personal property. Examples of such assets are vacation homes (if not maintained as rental property) and idle land. The current rate determined by the court is the rate at which income may be imputed to such nonperforming assets.

(Emphasis added.)

First, Ricky argues that the circuit court erred in imputing $300,000 in income to him for child-support purposes. He argues that there was no evidence that his tax returns were unreliable, that the $300,000 used to purchase his home would have already been reflected as income on his tax returns, and that the circuit court merely imputed income to him "for punishment related to Cynthia's million dollars in the safe argument from the divorce proceedings." We disagree.

Despite Ricky's contention that the circuit court must have second-guessed its previous findings made in the amended decree and attributed the $300,000 to money that was taken from the home safe, the circuit court's findings do not support that conclusion. Instead, the circuit court's findings on this issue were limited to the following:

> 9.     In determining [Ricky]'s income, the Court took the net profits for 2021 and 2022 (loss in 2022) and added back in the depreciation and averaged the two years together for a total of $11,000/monthly. Additionally, the Court imputed $300,000 in cash used to purchase [Ricky]'s new home is to be considered income. Since the middle child will turn eighteen and most likely graduate from high school in three to four years, and child support will have to be re-set for one child, the Court added $100,000 to [Ricky]'s gross income for the next three (3) years. The Court determined that [Ricky] earns a gross income of $18,300 per month. The Court relied on Administrative Order No. 10's language on accelerated depreciation in determining [Ricky]'s gross income.

In the absence of a statute or rule requiring specific findings of fact or a timely request for specific findings under Arkansas Rule of Civil Procedure 52, we will ordinarily presume that the circuit court made the findings necessary to support its judgment. *Mathis v. Hickman*, 2024 Ark. App. 172, at 25, 687 S.W.3d 119, 136–37.

Here, the circuit court heard evidence from an expert witness that there were large discrepancies between the gross income reported on Ricky's tax returns and his bank deposits. Ricky admitted that he would take cash back from deposits he made but suggested that he would later redeposit the cash back. He claimed that the $300,000 he used to purchase his home came from money he saved in a shoebox and other sources. Although Ricky argues that any money used was already reported on his tax return, the circuit court was not required to believe his self-serving argument and testimony in light of the expert testimony presented. We give deference to the circuit court on issues of witness credibility. *See Gadberry v. Gadberry*, 2023 Ark. App. 398. After the circuit court heard all the evidence and followed the directives of Section III of Administrative Order No. 10, we cannot say that the circuit court's decision to prorate and include $300,000 over the next three years in Ricky's income for the purposes of calculating child support was an abuse of discretion. As such, we affirm on this issue.[3]

Ricky also argues under this point that the circuit court should have included an additional $200 a month in Cynthia's income for child-support purposes because Cynthia testified that she had an agreement that an individual staying in her home was to start paying her rent the following month. He further argues that the money she received from the lots

---

[3]To the extent that Cynthia asks this court to increase Ricky's child support by finding more income attributable to Ricky, Cynthia did not cross-appeal. Our case law is well settled that when an appellee seeks something more than he or she received in the lower court, a notice of cross-appeal is necessary to give us jurisdiction of the cross-appeal. *Boothe v. Boothe*, 341 Ark. 381, 17 S.W.3d 464 (2000); *Priesmeyer v. Huggins*, 2021 Ark. App. 410, 637 S.W.3d 274.

she sold in 2022 should also be imputed to her as income. He claims that because the circuit court failed to include those amounts as income, we should reverse and remand for the circuit court to recalculate Cynthia's income. We disagree.

The circuit court's order does not include any specific findings as to how it calculated Cynthia's income. As previously stated, in the absence of a statute or rule requiring specific findings of fact or a timely request for specific findings under Rule 52, we will ordinarily presume that the circuit court made the findings necessary to support its judgment. *Mathis*, *supra*. Here, the circuit court was presented with evidence that Cynthia worked full time and made between $1000 and $1200 biweekly according to her affidavit of financial means. We acknowledge that Cythia also admitted that she anticipated receiving an additional $200 in rent starting the following month. Although Cynthia agreed that she made bank deposits of the money she received from the sale of two lots in 2022, there was no testimony regarding what portion of the deposits represented a profit. After hearing all this evidence, the circuit court found that Cynthia earned more than she reported on her affidavit of financial means and specifically found in its July 3, 2023, order that she earned a gross income of $2,708. On this record, we cannot say that the circuit court's calculation of Cynthia's income was an abuse of discretion. Accordingly, we affirm on this point.

V. *Cynthia's Contempt for Weekday-Visitation Issues*

Finally, Ricky argues that the circuit court erred in not finding Cynthia in contempt for weekday-visitation issues. Although Ricky did not file a motion for contempt on this basis, he did ask that Cynthia be held in contempt at the final hearing. In support, Ricky

29

explains that Cynthia admitted in her deposition that there were times a child would not want to go to midweek visitation and that she did not make the child go. On the basis of that testimony, Ricky argues that the circuit court should have found Cynthia in contempt. While Ricky raised this argument below, he failed to obtain a ruling on the issue. Our appellate courts have repeatedly stated that the failure to obtain a ruling on an issue at the circuit court level precludes review on appeal, even if the issue was raised below. *Tanner v. Kadusheva*, 2011 Ark. App. 379, 389 S.W.3d 635. We will not presume a ruling from the circuit court's silence. *Overton v. Little Rock Sch. Dist.*, 2025 Ark. App. 123, 708 S.W.3d 813. Accordingly, we are precluded from reviewing this issue and affirm.

VI. *Conclusion*

In conclusion, we affirm in part and reverse the circuit court's award of $5,800 in attorney's fees that were based on Ricky's withdrawal of his appeal of the amended decree.

Affirmed in part; reversed in part.

KLAPPENBACH, C.J., and HARRISON, J., agree.

*Trent D. Thomas*, for appellant.

*Gregory E. Bryant*, for appellee.